SIDNEY J. COHEN PROFESSIONAL CORPORATION
SIDNEY J. COHEN - 39023
427 Grand Avenue
Oakland, CA 94610
Telephone:   (510) 893-6682

Attorneys for Plaintiff
HOLLYNN DELIL

HANSON BRIDGETT LLP
KIMON MANOLIUS - 154971
kmanolius@hansonbridgett.com
KURT A. FRANKLIN - 172715
kfranklin@hansonbridgett.com
ADAM W. HOFMANN - 238476
ahofmann@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

Attorneys for Defendant
GOLDEN GATE BRIDGE, HIGHWAY AND
TRANSPORTATION DISTRICT

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLYNN DELIL,<br><br>                    Plaintiff,<br><br>        v.<br><br>GOLDEN GATE BRIDGE, HIGHWAY<br>AND TRANSPORTATION DISTRICT;<br>AND DOES 1 THOUGH 20, Inclusive,<br><br>                    Defendants. | No. C08-01105<br><br>**JOINT CASE MANAGEMENT<br>CONFERENCE STATEMENT**<br><br>Fed. R. Civ. P.26(f); L.R. 16-9<br><br>**Date:**        **June 5, 2008**<br>**Time:**        **10:00 a.m.**<br>**Judge:**       **Maria-Elena James**<br>**Room:**        **B**<br>**Action Filed:** **February 25, 2008**<br>**Trial Date:**   **Not set.** |

      Pursuant to the Order of the Honorable Maria Elena James, Plaintiff Hollynn Delil

and Defendant Golden Gate Bridge, Highway and Transportation District submit their

Joint Case Management Statement and Rule 26(f) Report, as follows:

- 1 -

1    **1.    Jurisdiction and Service**

2         This Court has jurisdiction of this action under 28 U.S.C. §1331 for alleged

3    violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12131 *et. seq.,*

4    (ADA Title II) and under 28 U.S.C. §§1343 (3) and (4) for claims arising under §504 of

5    the Rehabilitation Act of 1973.  Under pendant jurisdiction, Plaintiff brings attendant and

6    related causes of action arising from the same facts under California law, including but

7    not limited to, alleged violations of California Government Code §4450, *et. seq.,* and

8    §11135, Health & Safety Code §19955 *et. seq.,* including §19959, Title 24 California

9    Code of Regulations; and California Civil Code §§ 54, 54.1 and 55.

10        Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on

11   the fact that the real property which is the subject of this action, is located in this district,

12   and that Plaintiff's causes of action arose in this district.  There presently are no issues

13   with regard to personal jurisdiction or venue.

14        Under the Federal Rules of Civil Procedure Rule 4(m), Defendant Golden Gate

15   Bridge, Highway and Transportation District requests that each DOE Defendant be

16   dismissed if they are not served within 120 days of filing the complaint.

17   **2.    Facts**

18        **A.    Plaintiff's Position**

19        Plaintiff Hollynn Delil ("Ms. Delil") is a "person with a disability" or "physically

20   handicapped person."  Ms. Delil requires the use of a wheelchair for locomotion and is

21   unable to use portions of public facilities which are not accessible to disabled persons

22   who require the use of a wheelchair.

23        This case involves the denial of disabled access to Ms. Delil at the Larkspur Ferry

24   Terminal, on the Ferries Mendocino and Del Norte , and at the San Francisco Ferry

25   Terminal, including but not necessarily limited to, lack of proper disabled accessible

26   parking and "paths of travel" in and at the terminals, and lack of proper accessible

27   ferries for transporting persons in wheelchairs between the two terminals.  Ms. Delil was

28   denied equal protection of the law, and was denied Civil Rights under both California

- 2 -

1    law and federal law at both terminals and aboard both the Del Norte and the Mendocino

2    ferries.  Ms. Delil was denied her rights to full and equal access because the terminals

3    and the ferries were not, and are not now, properly accessible to persons with

4    disabilities such as Ms. Delil who use wheelchairs.  Ms. Delil seeks to ensure that

5    Defendant Golden Gate Bridge, Highway and Transportation District, and any other

6    responsible parties, remove all barriers to access and perform the work at the terminals

7    and on the ferries necessary to bring them into compliance with all federal and state

8    disabled access laws and regulations so that they are fully accessible to persons with

9    disabilities.  Ms. Delil also seeks damages for her personal and physical injuries and

10   discriminatory experiences  as a result of the failure of the Golden Gate Bridge,

11   Highway and Transportation District, and any other responsible parties to provide

12   accessible facilities and ferries and seeks recovery of reasonable attorney's fees,

13   expenses and costs.

14        More specifically, this lawsuit results from Ms Delil's encounters and denials of

15   access at the Larkspur ferry terminal, on the Del Norte and Mendocino ferries, and at

16   the San Francisco ferry terminal on September 6, 2007, as follows:

17        1.    Ms. Delil arrived at the Larkspur terminal in her wheelchair

18   accessible van with a friend at approximately noon for a planned ferry ride to San

19   Francisco and a visit to the San Francisco Museum of Modern Art.

20        2.    Upon her arrival in the parking lot, Ms. Delil found that there were no

21   "accessible" spaces available, but there were five (5) empty spaces blocked off by

22   yellow tape and cones.  Ultimately, Ms. Delil's friend had to move some cones and tape

23   so that Ms. Delil could park.

24        3.    After Ms. Delil purchased her ticket, she encountered an extremely

25   steep and dangerous ramp on the gangway while attempting to board the Del Norte

26   ferry.  During her ascent up the steep ramp, Ms. Delil could not get up the ramp by

27   herself, and needed the help of her friend to push her up the ramp, and went over

28   backwards twice in her wheelchair, being saved from a major fall by being caught by her

- 3 -

wheelchair's anti-tip wheels.  During this process, Ms. Delil, among other things, injured her neck.

4.    Once on the Del Norte for the crossing to San Francisco, Ms. Delil encountered noncompliant wheelchair seating and tables, a noncompliant counter at the snack bar, noncompliant thresholds, no access to life jackets, and, most distressingly, a non compliant restroom and inaccessible toilet which she was not able to use because of insufficient space to make a "side transfer" from her wheelchair to the toilet.

5.    Upon arrival at the San Francisco terminal, Ms. Delil encountered another steep gangway ramp which caused her great difficulty in departing the Del Norte.

6.    Upon her departure from the San Francisco Terminal, Ms. Delil again had great difficulty in getting up the steep ramp, this time to board the Mendocino, and got stuck on the steep and dangerous gangway ramp to the ferry.  This again required her friend's assistance in getting up the ramp.  When her friend gave her a push to get unstuck and get up the ramp, Ms. Delil's wheelchair went flying forward on the back anti tip wheels and then landed forward with a bang, again injuring her neck.

7.    Once on the Mendocino for the crossing to Larkspur, Ms. Delil encountered noncompliant wheelchair seating, a noncompliant counter, and, most distressingly, a non compliant restroom and inaccessible toilet, which she was not able to use because of insufficient space to make a "side transfer" from her wheelchair to the toilet.

8.    Upon arrival at the Larkspur terminal, Ms. Delil encountered another steep gangway ramp which caused her great difficulty in departing the Mendocino.

As a result of the actions and failures to act of the Defendant, and as a result of the failure to provide disabled access, Ms. Delil suffered, and continues to suffer on a daily basis, denial of her civil rights, physical injury, psychological and emotional discomfort, pain and suffering, and denial of her rights to full and equal access to public facilities, all to her general and statutory damages.  As a result of the above facts, Ms.

- 4 -

1  Delil was denied her civil rights, and continues to be denied her civil rights, and she was

2  embarrassed, humiliated, and was denied full and equal access solely on the basis that

3  she is physically disabled and unable to use the subject public facilities because of their

4  inaccessibility to persons who require the use of wheelchairs for mobility.

5      Plaintiff is not aware of any specific factual issues in dispute.

6      **B.    Defendant's Position**

7      **Plaintiff's Allegations**

8      Plaintiff's complaint is based on her making a single trip on the District's two

9  catamaran fast ferries on September 6, 2007, traveling between Larkspur and San

10  Francisco.  The Golden Gate Bridge, Highway and Transportation District denies her

11  allegations.  In sum, Plaintiff alleges that she was denied meaningful access to District

12  services based on alleged physical deficiencies in (1) the parking at the Larkspur

13  terminal, (2) the paths of travel in Larkspur, (3) the steep gangways for boarding in both

14  Larkspur and San Francisco, and (4) the two fast ferries (accessibility of snack counter,

15  seating, lifejackets and restrooms).

16      On May 15, 2008, at the F.R.C.P. 26(f) conference, Plaintiff alleged that she is a

17  paraplegic who needs a wheelchair to ambulate.  She claims her paraplegia is the result

18  of an auto accident.  She further specifically claims that she is impaired in the major life

19  activity of walking.  For this lawsuit, she is claiming no other disabilities.  Next, while she

20  claims physical injury as a result of the District's conduct, she has not seen any doctors

21  and has no documentation of her physical injuries allegedly suffered as a result of the

22  District conduct.  Of importance, Plaintiff is an experienced ADA litigant.  She has filed at

23  least 19 disability-access lawsuits in the Northern District of California.  She also

24  purports to be an expert on the ADA Accessibility Guidelines (ADAAG), serving as an

25  expert for cases that are brought by other regular ADA plaintiffs.

26      **The Golden Gate Bridge, Highway and Transportation District**

27      As a transit agency, the Golden Gate Bridge, Highway and Transportation

28  District's divisions provide meaningful access to the District's programs and services.

- 5 -

1    For purposes of access, the District must follow the Department of Transportation

2    (Federal Transit Administration), the Department of Justice, and the Access Board.

3    Because the District accepts federal transit money, every three years the FTA requires a

4    "triennial review" of the District.  Among the areas subject to the triennial review are civil

5    rights, including specifically the ADA.

6          As background, the District is a public agency[1] consisting of three operating

7    divisions - Bus, Ferry and Bridge.  The original 1969 legislative mandate for the Bus

8    Division (Golden Gate Transit) was to reduce congestion on the Golden Gate Bridge and

9    the 101 Corridor.  District bus and ferry service are now an integral part of the North Bay.

10   Golden Gate Transit's buses carry more than 7 million passengers annually.  On any

11   average weekday, the District's approximately 200 wheelchair lift equipped coaches

12   carry over 24,000 passengers, to destinations in Marin, San Francisco, Sonoma and

13   Contra Costa counties.  Similarly, the District's ferries operate between San Francisco

14   and Larkspur, San Francisco and Sausalito -- and during Giants' home baseball games,

15   they also serve AT&T Park.  Last calendar year (2007), ferry ridership exceeded

16   2,000,000 riders.  The District serves able-bodied passengers and passengers with

17   disabilities alike, and extensively trains its ferry crews and bus operators to meet the

18   special needs of passengers with disabilities.

19         The Ferry Division currently uses ferries constructed by (1) Campbell Industries

20   (Spaulding-designed single-hull vessels-- the M.S. Marin, the M.S. San Francisco, and

21   the M.S. Sonoma), (2) Dakota Creek Industries (the M.V. Del Norte) and, (3) Nichols

22   Bros. (the M.V. Mendocino).  The Spaulding vessels are older, having been put into

23   service at the District between 1976 and 1977.  Their one-way crossing times are

24   between 45 and 50 minutes.  The M.V. Del Norte and the M.V. Mendocino are high

25   speed catamarans that can cross the Bay in 30 minutes.  All ferry procurement is put out

26   to bid, a process that includes public comment.  Ferries are ultimately acquired with the

27   goal of maintaining a fleet of ferries that complement one another operationally.

28   [1] Streets & Highway Code §§ 27500 et. seq.

- 6 -

1    **Other Disability Access Features at the District**

2    Since 1979, the District has utilized its Advisory Committee on Accessibility (ACA)

3    to advise the District's Board of Directors on transportation issues pertaining to seniors

4    and the disabled.  The ACA, composed entirely of seniors and persons with disabilities,

5    meets monthly and forwards its recommendations and comments to the District's Board

6    of Directors.

7    Next, the District offers 50% discounts on ferry trips to persons with disabilities

8    Finally, the District further offers paratransit service through Whistlestop Wheels.

9    Paratransit service is available to persons who (1) are unable to independently board,

10    ride or exit a lift-equipped bus because of a disability, (2) are unable to travel to or from a

11    transit stop because of a disability or, (3) can independently use District bus service, but

12    wheelchair lifts cannot be deployed at their bus stop.

13    The District also accepts comments from the public via telephone, an internet

14    form, regular mail and facsimile.  It logs the comments, including complaints related to

15    disability access.  In general, complaints are received through the Customer Service

16    Department.  If the passenger provides sufficient information, the District investigates the

17    complaint.  The investigation results may warrant further action, retraining or discipline.

18    Further, if an access complaint cannot be resolved informally, the District has adopted a

19    formal grievance procedure.

20    **3.    Legal Issues**

21    **A.    Plaintiff's Position**

22    1.    Whether reasonable modifications in policy, and modifications to the

23    premises, are required under Title II of the Americans with Disabilities Act of 1990, the

24    corresponding regulations entitled Americans with Disabilities Act Access Guidelines,

25    the Rehabilitation Act of 1973, and California statutory and regulatory law, including the

26    California Disabled Person's Act (California Civil Code §§54, et. seq.), related statutes,

27    and Title 24.

28

- 7 -

25

2.    Whether there have been violations of the California Disabled Person's Act and, if so, whether Plaintiff is entitled to damages.

3.    Whether there have been violations of the ADA standards as incorporated by reference into California Disabled Person's Act and, if so, whether Plaintiff is entitled to damages.

**B.    Defendant's Position**

1.    Was Plaintiff excluded from meaningful participation or denied the benefits of the District's services, programs or activities, or was she otherwise discriminated against by the District?

2.    Which disability-access regulations or "standards" apply to ferries, passenger vessels, gangways, and piers in the San Francisco Bay?  The ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), the California Building Code (Cal Title 24 California Code of Regulations), or the pending Passenger Vessel Accessibility Guidelines (PVAG)?

3.    Does maritime law preempt Plaintiffs state-law access claims as they relate to a ferries and passenger vessels, and the gangways and piers, which are operated on the San Francisco Bay?

4.    Was the alleged exclusion, denial of benefits or discrimination based solely on Plaintiff's disability?

5.    Are damages barred because Plaintiff cannot show that the District intentionally discriminated against her?

6.    Are the modifications requested by Plaintiff readily achievable?

7.    Would Plaintiff's requested program changes and removal of alleged barriers fundamentally alter the service provided?

8.    Are Plaintiff's requested changes or modifications unduly burdensome?

- 8 -

9.    Would Plaintiff's requested changes pose a direct threat or significant risk to Plaintiff or others?

10.    Is Plaintiff a qualified individual with a disability?

11.    Does Plaintiff have standing to request relief for "barriers" unaffected by her alleged disability?

12.    Does Plaintiff have standing to bring a claim under Government Code §4450 et. seq.?

13.    Does Plaintiff have standing to bring a claim under Health and Safety Code §19955 et. seq.?

**4.    Motions**

The parties have not yet conducted any formal discovery, and they have not made any motions.  If the parties do not settle the case within a reasonable period of time, counsel expect that there will be one or more summary judgment or summary adjudication motions presented to the Court.

**5.    Amendment of Pleadings**

Plaintiff does not presently intend to add any parties, claims, or defenses, and proposes August 5, 2008 as the deadline for amending the pleadings.

Defendant is reviewing its contracts with the shipbuilders, designers, engineers, and other contractors.  District contracts typically require new vessels and facilities to comply with the Americans with Disabilities Act.

**6.    Evidence Preservation**

The parties assert that they have complied with the evidence preservation requirements.

**7.    Disclosures**

The parties will exchange Initial Disclosures pursuant to Federal Rule Of Civil Procedure 26(a)(1) by no later than May 29, 2008.

On May 29, 2008, the District is permitting Plaintiff's expert and attorney to physically inspect the public areas of the San Francisco and Larkspur terminals, and the

- 9 -

1   Del Norte ferry (the Mendocino ferry is in dry dock having engines repaired and it is
2   unclear when it will be available for tour).

### A.    Plaintiff's Position

4       In order to avoid an actual or potential conflict between the public interest in
5   achieving full and equal access for persons with disabilities in this civil rights, injunctive
6   relief case and the monetary aspects of the case, it is Ms. Delil's counsel's policy not to
7   disclose or negotiate damages until there is a tentative settlement of the injunctive relief
8   aspect of the case. This procedure of disclosing damages (and attorney's fees) only
9   upon a tentative settlement of the injunctive relief aspect of the case is recognized and
10   mandated in General Order 56 for ADA Title III cases. While General Order 56
11   technically does not apply to this ADA Title II case, its principles are equally applicable.
12   Therefore, pursuant to F.R.C.P. 26(f)(1), Ms. Delil requests that your Honor modify the
13   timing for Ms. Delil to disclose the damages information set forth in F.R.C.P. 26(a)(1) by
14   ordering that Ms. Delil disclose the information upon a tentative settlement of the
15   injunctive relief aspect of the case.

### B.    Defendant's Position

17       At the Rule 26(f) meeting on May 15th, Plaintiff stated she would not provide a
18   statement of damages or comply with F.R.C.P. 26(a)(1)(A)(iii) until the parties agree
19   upon equitable relief. There is no authority for such position. The District requests an
20   order directing Plaintiff to disclose a computation of each category of damages claimed
21   and to produce any non-privileged documents or evidentiary materials on which the
22   damage calculation is based. The District further requests enough specificity to enable it
23   to understand its potential exposure and make informed decisions as to alternative
24   dispute resolution and discovery.

### 8.    Discovery (Fed R. Civ. P. 26(f)

26       The parties are working diligently to explore early resolution through the ADR
27   process. In the event the lawsuit cannot be resolved through the ADR process, the

- 10 -

1   parties expect that formal discovery will include interrogatories, document production,

2   depositions, and admissions.

3        The parties do not propose any limitations or modifications of the discovery rules,

4   except that the District requests 12 hours of deposition time with Plaintiff Delil due to her

5   extensive litigation history and request for damages in this case.  Plaintiff opposes this

6   request.

7   **9.    Class Action**

8        This is not a class action.

9   **10.   Related Cases**

10       There are no related cases.

11  **11.   Relief**

12       **A.    Plaintiff**

13       Ms. Delil seeks injunctive relief that requires Defendant Golden Gate Bridge,

14  Highway and Transportation District remove all barriers to access, and perform the work

15  at the terminals and on the ferries necessary to bring them into compliance with all

16  federal and state disabled access laws and regulations so that they are fully accessible

17  to persons with disabilities.  Ms. Delil also seeks damages for her personal and physical

18  injuries and discriminatory experiences  as a result of the failure of the Golden Gate

19  Bridge, Highway and Transportation District and any other responsible parties to provide

20  accessible facilities and ferries, and seeks recovery of reasonable attorney's fees,

21  litigation expenses, and costs.

22       Ms. Delil's damages include statutory damages from the date of her encounters

23  until the date the premises are made accessible in compliance with federal and state

24  laws and regulations, and general physical injury, emotional distress, anxiety,

25  embarrassment, and humiliation damages according to proof, trebled per California Civil

26  Code §54.3.  In order to avoid the appearance of compromising the public interest in

27  achieving "full and equal" access for person with disabilities, it is Ms. Delil's attorney's

28  policy not to make any formal demand for, or to negotiate, damages or attorneys' fees,

- 11 -

1  litigation expenses, and costs until all injunctive relief issues are resolved.

2      **B.    Defendant**

3      The District provides meaningful access to able-bodied and disabled persons

4  alike, and denies Plaintiff is entitled to the relief that she requests.

5  **12.    Settlement and ADR**

6      The parties hope to resolve the lawsuit through the ADR process, if possible, and

7  as noted above, the District has agreed to permit Plaintiff's counsel and expert

8  consultant access to the public areas of property and premises which are the subject of

9  the lawsuit for a voluntary site inspection as a first step in the settlement process.  The

10 parties presently do not anticipate that any formal discovery or motions will be necessary

11 to prepare the parties for a negotiated resolution of the lawsuit -- with the exception that

12 the District requests a statement of damages as required by F.R.C.P. Rule

13 26(a)(1)(A)(iii).

14     The parties have not been able to agree on a process and have provided the

15 ADR Unit with a Notice Of Need For Telephone Conference to discuss a Settlement

16 Conference with a Magistrate Judge and a mediation as the potential methods to be

17 used to attempt to settle the lawsuit.

18 **13.    Consent to Magistrate Judge For All Purposes**

19     The parties consent to have Magistrate Judge Maria-Elena James conduct all

20 further proceedings, including trial and entry of judgment.

21 **14.    Other References**

22     The parties presently do not consider the case suitable for reference to binding

23 arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

24 **15.    Narrowing of Issues**

25     Defendant assert that the most complex issue in this case are (1) what set of

26 regulations must the court apply to ferries, passenger vessels, and the gangways onto

27 these vessels, and (2) whether Plaintiff can state that she has been denied meaningful

28 access to the District's programs and services.

- 12 -

The parties expect to engage in discussions to narrow the issues before trial, especially with respect to the injunctive relief aspect of the case. In this regard, either prior to, or at a mediation or settlement conference, Plaintiff will provide Defendant with a detailed itemization of the barriers to access on the property and the ferries, and the parties will attempt to reach agreement on the scope of work to be performed. Further, if alternative dispute resolution is unsuccessful, the parties anticipate filing dispositive motions to help narrow the issues for trial.

If trial becomes necessary, the Plaintiff may wish to bifurcate the issues by first addressing the injunctive relief aspect of the lawsuit and then, if liability is found, the damages aspect of the lawsuit.

**16.    Expedited Schedule**

The parties do not consider that the case is amenable to being handled on an expedited basis with streamlined procedures.

**17.    Scheduling**

The parties request that the court defer setting deadlines and a trial date until after the parties have concluded the ADR process, with another Case Management Conference scheduled after ADR.

If the court decides to set deadlines and a trial date at this time, the parties request the following:

| Event | Date |
|---|---|
| Cutoff For Plaintiff to Amending Complaint to Add Defendants, Otherwise Amend Pleadings, and Serve DOE Defendants | August 5, 2008 |
| Early Settlement Conference Before Magistrate Judge Laporte or early Mediation[2] | Within 120 days of June 5, 2008 Case Management Conference |
| Expert Designation | November 17, 2008 |
| Rebuttal Expert Designation | December 5, 2008 |

---

[2]  The District prefers an early Settlement Conference. Ms. Delil prefers a Mediation with a Settlement Conference to follow if necessary.

- 13 -

| Non-Expert Discovery Cut Off | March 6, 2009 |
|---|---|
| Expert Discovery Cut Off | March 20, 2009 |
| Hearing on Dispositive Motions and Further Case Management Conference | April 23, 2009 |
| Trial | September 2009 |

**18.    Trial**

The parties estimate four (4) to five (5) days for trial, exclusive of jury selection.

**19.    Disclosure of Non-party Interested Entities or Persons**

Plaintiff has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.

Plaintiff restates its Certification as follows:

Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than the named parties, there is no interest to report.

The District is a governmental entity.  California Streets and Highway Code sections 27000 et seq., and 27500, et. seq.  As a governmental entity Defendant, neither Local Rule 3-16 nor F.R.C.P. 7.1 apply to it.

**20.    No Other Matters**

///

///

///

///

///

///

///

///

///

///

///

- 14 -

1    DATED:  May 28, 2008

2

3                                              SIDNEY J. COHEN PROFESSIONAL
                                               CORPORATION

4

5    BY: _____
                                               SIDNEY J. COHEN
                                               Attorneys for Plaintiff
6                                              HOLLYNN DELIL

7    DATED:  May 28, 2008                      HANSON BRIDGETT LLP

8

9    By: _____
                                               KIM MANOLIUS
10                                             KURT A. FRANKLIN
                                               ADAM W. HOFMANN
11                                             Attorneys for Defendant
                                               GOLDEN GATE BRIDGE, HIGHWAY
12                                             AND TRANSPORTATION DISTRICT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -